# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| JOSE PEQUENO-GARCIA, #33540-177, § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | CIVIL NO. 3:17-CV-0943-D-BK |
| § | | |
| RICK CALVERT, § | | |
| Deputy Criminal Chief, § | | |
| Defendant. § | | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this *pro se* case was automatically referred to the United States magistrate judge for judicial screening. Upon review of the relevant pleadings and applicable law, this case should be **SUMMARILY DISMISSED**.

## I. BACKGROUND

In his complaint filed April 4, 2017, Plaintiff, a federal prisoner, alleges that Defendant Rick Calvert, Deputy Criminal Chief of the United States Attorney's Office for the Northern District of Texas, "[f]ailed to comply with his promises regarding [Plaintiff's] life safety." Doc. 3 at 1, 3. Specifically, Plaintiff avers that federal agents rescued him from kidnappers in 2005, and that he later "testif[ied] in favor of the Government," which resulted in subsequent arrests. Doc. 3 at 4, 8. Plaintiff contends that, because of his cooperation and guilty plea, Defendant Calvert "promised . . . to help me . . . stay in the United States," but did "nothing to stop my [subsequent] deportation to Mexico [on April 6, 2010] where I was kidnapped for [a] second time by the same Tamaulipas Cartel, of Mexico." Doc. 3 at 4-5, 9-10. Plaintiff maintains that Defendant Calvert showed "reckless disregard concerning his life safety" when he failed to stop his deportation despite known death threats from the Tamaulipas Cartel, which had kidnapped

Plaintiff in 2005. Doc. 3 at 4-5, 9. Plaintiff avers that he "miraculously . . . escape[d] from his kidnappers and with no choice he run [sic] for his life and re-entry [sic] again to the United States to save his life but was arrested for his illegal re-entry." Doc. 3 at 9.

Plaintiff further alleges that, since his re-incarceration, he has written "several letters to Defendant Calvert requesting . . . his help (as he has promised) with Plaintiff's immigration issues as he cannot go back to Mexico because his life and the life of his family are in great danger to death." Doc. 3 at 9-11. Defendant Calvert allegedly responded to Plaintiff's entreaties on June 15, 2016, asking Plaintiff to have defense counsel contact him. Doc. 3 at 15. Subsequently, by letter dated July 12, 2016, David Diaz (Plaintiff's defense counsel) advised Plaintiff that he had spoken with Defendant Calvert about Plaintiff's "request for Protection from the Mexican mafia," and suggested that Plaintiff write to Defendant Calvert and inform him specifically about all the death threats that he had received. Doc. 3 at 16. Plaintiff avers that on July 20, 2016, he in turn wrote a letter to Defendant Calvert providing a timeline of the relevant events and reiterating that, as part of the plea deal, Defendant Calvert had offered asylum to him and his family. Doc. 3 at 20. As relief, Plaintiff seeks an order enforcing Defendant Calvert's 2005 promise to help him remain in the United States. Doc. 3 at 4, 11.

A review of court records confirms that in September 2005, Plaintiff pled guilty in this Court to possessing with intent to distribute a controlled substance and, in June 2006, was sentenced to 60 months' imprisonment and a three-year term of supervised release. *United States v. Pequeno-Garcia*, No. 3:05-CR-0178-B (N.D. Tex. Jun. 14, 2006); Crim. Doc. 38. The presentence report (PSR) reflected that Plaintiff would become deportable because of his conviction in that case. Crim. Doc. 49 at 18, PSR ¶ 85. The judgment also provided that, as a

condition of supervised release, Plaintiff was required to surrender for deportation upon the completion of his term of imprisonment. Crim. Doc. 38 at 4. However, in 2015, Plaintiff pled guilty to illegal reentry after deportation in the Waco Division of the United States District Court for the Western District of Texas, and, in early 2016, was sentenced to 60 months' imprisonment. *United Sates v. Pequeno-Garcia*, No. 6:15-CR-0161 (W.D. Tex., Jan. 29, 2016).[1]

## II. ANALYSIS

**1. The Court lacks jurisdiction over the alleged breach of oral promises**

Before screening an *in forma pauperis* complaint under 28 U.S.C. § 1915(e), the Court must examine the threshold question of whether it has subject-matter jurisdiction. It is an issue of the utmost importance, and should be addressed, *sua sponte* if necessary, at the inception of any federal action. *See System Pipe & Supply, Inc. v. M/V Viktor Kurnatovsky*, 242 F.3d 322, 324 (5th Cir. 2001); FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

The Court liberally construes Plaintiff's filings with all possible deference due a *pro se* litigant. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*pro se* pleadings are "to be liberally construed," and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."); *Cf.* FED. R. CIV. P. 8(e) ("Pleadings must be construed so as to do justice"). Even under this most liberal construction, however, the Court lacks jurisdiction over Plaintiff's claim to enforce an oral promise that Defendant Calvert allegedly made in 2005 in conjunction with his guilty plea.

---

[1] The online docket sheet is available through Public Access to Court's Electronic Records (PACER), https://www.pacer.gov (last visited 07/27/2017).

As liberally construed, Plaintiff asserts breach of contract claims against Defendant Calvert in his official capacity. *See Humphries v. Various Fed. USINS Employees*, 164 F.3d 936, 941 (5th Cir. 1999) (construing informant's *pro se* pleadings to raise a breach of contract claim against federal agents in their official capacity because the government is generally not bound by the unauthorized actions of its agents) (citing *Whiteside v. United States,* 93 U.S. 247, 257 (1876); *see also Smart v. Holder*, 368 F. App'x 591, 593 (5th Cir. 2010) (suits against Department of Justice employees in their official capacity "are really suits against the government, and for these suits to go forward, the government must waive its sovereign immunity."). "A contract [claim] against a government agent in his official capacity, however, is nothing more than a suit directly against the sovereign—permissible only within the limited confines of the Tucker Act." *Humphries*, 164 F.3d at 941 (citing *Ware v. United States,* 626 F.2d 1278, 1286–87 (5th Cir.1980) (Tucker Act constitutes a limited waiver of sovereign immunity for contract claims against the United States)).

"The Tucker Act [28 U.S.C. § 1491] grants concurrent jurisdiction to the district courts and the Court of Claims over non-tort claims for money damages against the United States not exceeding $10,000." *Graham v. Henegar*, 640 F.2d 732, 734 (5th Cir. 1981) (internal citations omitted).[2] However, the Tucker Act does not cover every agreement with the federal

---

[2] The Tucker "Act has long been construed as authorizing only actions for money judgment and not suits for equitable relief against the United States. The reason for the distinction flows from the fact that the Court of Claims has no power to grant equitable relief, and the jurisdiction of the district courts under the Act was expressly made concurrent with the Court of Claims." *Richardson v.* Morris, 409 U.S. 464, 465-66 (1973) (quotations and quoted case omitted); *see also Jones v. Alexander,* 609 F.2d 778, 781 (5th Cir. 1980) (the Tucker Act "only applies to suits for money damages."); 28 U.S.C. § 1346(a)(2) (noting that money damages is the sole remedy for an alleged breach of contract against the federal government, whether expressed or implied).

government.  See *Kania v. United States,* 650 F.2d 264, 268 (Ct. Cl. 1981) (contract liability arises when "the sovereign steps off the throne and engages in purchase and sale of goods, lands, and services, transactions such as private parties, individuals or corporations also engage in among themselves").  Indeed, contracts that are entirely concerned with the conduct of parties in a criminal case, without a clear, unmistakable statement triggering monetary liability, do not invoke Tucker Act jurisdiction.  *Sanders v. United States,* 252 F.3d 1329, 1335-36 (Fed. Cir. 2001); *see also Sadeghi v. United States,* 46 Fed. Cl. 660, 662 (2000) ("Because administering the criminal justice system is an activity that lies at the heart of sovereign action, breach of contract arising out of the criminal justice system does not ordinarily give rise to an action under the Tucker Act for damages."); *Kania*, 650 F.2d 268 ("the high function of enforcing and policing the criminal law is assigned to the courts of general jurisdiction").

Here, Defendant Calvert's alleged oral promise to help Plaintiff remain in the United States relates only to the conduct of the parties in the 2005 criminal case and, accepting Plaintiff's allegations as true, involved no explicit agreement for money damages in the event of a breach.  See *Sanders*, 252 F.3d at 1331, 1335-36 (Court of Federal Claims lacked jurisdiction over post-trial bail agreement under Tucker Act because it related only to conduct of parties in the criminal case and did not expressly provide for damages); *Judd v. United States*, 189 F. App'x 951, 952-53 (Fed. Cir. 2006) (holding the same as to pretrial diversion agreement); *Dethlefs v. United States*, 60 Fed. Cl. 810, 813-14 (2004) (holding the same as to unspecified contract entered with United States in course of criminal case); *Sadeghi*, 46 Fed. Cl. at 662-63 (holding the same as to promise to protect from retaliation by foreign government for providing information about terrorist activities).  While Plaintiff alleges Defendant Calvert made the

5

promises at issue in connection with the 2005 plea deal, Doc. 3 at 10, Plaintiff does not allege that the promise clearly and unmistakably subjected the government to monetary liability for any breach.  Moreover, Plaintiff requests only equitable relief – namely specific performance of the purported promise to help him remain in the United States.  Doc. 3 at 4, 11.  As such, the oral promises Defendant Calvert allegedly made in conjunction with the 2005 plea agreement are not a contract within the scope of the Tucker Act.  Thus, the Court lacks jurisdiction over Plaintiff's claim.[3]

That notwithstanding, Plaintiff's claims are also barred by limitations.  He did not file his complaint within six years of the time his cause of action first accrued.  *See* 28 U.S.C. § 2401(a) (non-tort civil actions against the United States must be filed within six years after the right of action first accrues).  Plaintiff alleges he was deported on April 6, 2010. Doc. 3 at 9; *see also Indictment* and *Factual Basis* filed in *United Sates v. Pequeno-Garcia*, No. 6:15-CR-00161 (W.D. Tex.).  As of that date, he knew or should have known that Defendant Calvert had not kept the alleged 2005 promise to prevent Plaintiff's deportation.  Thus, the deadline for filing suit was six years later on April 6, 2016.  However, March 30, 2017, almost one year later, is the earliest date Plaintiff's complaint is deemed to have been filed.[4]  Moreover, Plaintiff avers that he did not contact Defendant Calvert about the breach of the purported promise until April 18,

---

[3] Likewise, the Court lacks jurisdiction to enforce prospectively the verbal promise, insofar as Plaintiff seeks to prevent his deportation at an unspecified date in the future.  Doc. 3 at 4, 11.

[4] A pro se prisoner's complaint is deemed filed as soon as the prisoner deposits it into the prison mail system.  *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995) (citing *Houston v. Lack*, 487 U.S. 266 (1988)).  The complaint and motion to proceed in forma pauperis apparently were signed on March 30, 2017; thus, the Court presumes that is the date the documents were also presented to prison officials for mailing.  Doc. 3 at 6; Doc. 4 at 2.

2016, over six years after he was first deported, and nine months after he was indicted in the Western District of Texas for illegal reentry into the United States. *See* Doc. 3 at 15 (Plaintiff's first letter to Defendant Calvert); July 14, 2015 *Indictment* in No. 6:15-CR-00161 (W.D. Tex.).

Consequently, the Court lacks jurisdiction to hear Plaintiff's claim under the Tucker Act, or any other act subject to the six-year statute of limitations contained in 28 U.S.C. § 2401(a) (providing that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues"). *United States v. One 1961 Red Chevrolet Impala Sedan,* 457 F.2d 1353, 1357 (5th Cir. 1972) (failure to bring a Tucker Act action within the applicable statute of limitations "deprives the district court of jurisdiction to hear the action at all."); *Alexander v. U.S. (I.R.S., Dept. of Treasury)*, 890 F. Supp. 598, 600 (N.D. Tex. 1995) (dismissing time-barred Tucker Act claim for want of jurisdiction); *see also John R. Sand & Gravel Co. v. United States,* 552 U.S. 130, 133-134 (2008) (holding that similar limitations provisions, including the six-year one for claims filed in the Court of Federal Claims, 28 U.S.C. § 2501, are "more absolute" (non-waivable and not subject to equitable considerations), thus, "as convenient shorthand" have been referred to by the courts as "jurisdictional").

The Court also notes that Plaintiff is not seeking declaratory or injunctive relief against U.S. Immigration and Customs Enforcement (ICE) on the ground that his deportation would violate the plea agreement. However, assuming such claim would be ripe, the Court of Appeals for the Fifth Circuit has not addressed the issue and other circuits are split on whether a promise of non-deportation made by the prosecutor is enforceable against ICE or the former Immigration and Naturalization Service (INS). *See, e.g., Thomas v. INS*, 35 F.3d 1332, 1338-41 (9th Cir.

1994) (United States Attorney has implied actual authority to bind the government, including the INS, as part of plea agreement not to seek deportation); *Margalli–Olvera v. INS,* 43 F.3d 345, 353-54 (8th Cir. 1994) (same); *San Pedro v. United States*, 79 F.3d 1065, 1070–71 (11th Cir. 1996) (United States Attorney cannot preclude a deportation proceeding by promising an alien defendant that he will not be deported because such action would constitute an impermissible exercise of authority over the former INS). That notwithstanding, unlike the aforementioned cases, the promises Defendant Calvert allegedly made were not included in the parties' *Plea Agreement*, Crim. Doc. 26, which specifically provides that it "is a complete statement of the parties' agreement and may not be modified unless the modification is in writing and signed by all parties," Crim. Doc. 26 at 5. Moreover, no court has concluded that a prosecutor's <u>oral</u> promise, like the one at issue here, binds ICE or the former INS. Indeed, the Third Circuit has held otherwise. *See United States v. Igbonwa*, 120 F.3d 437, 444 (3d Cir. 1997) (holding the United States Attorney lacked the authority to unilaterally make an oral promise of non-deportation in exchange for defendant's cooperation in a criminal matter that binds the former INS).

### 2. Any civil rights claim would be frivolous under the facts alleged

Plaintiff submitted his complaint on the Court's civil rights complaint form. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (establishing the right to bring civil rights actions against federal officials). However, he does not allege any constitutional violation by Defendant Calvert stemming from the 2005 alleged oral promise to help him stay in the United States. Even assuming Plaintiff intended to raise a cognizable constitutional claim, it would be barred by the two-year limitations period attendant to such

claims. *See Spotts v. United States*, 613 F.3d 559, 573 (5th Cir. 2010) (statute of limitations in *Bivens* action is two years, the limitations period governing personal injuries under Texas law). *See also Stanley v. Foster*, 464 F.3d 565, 568 (5th Cir. 2006) (court can raise *sua sponte* the issue of a limitations bar in actions where plaintiff is proceeding *in forma pauperis*).

Had Plaintiff sought to raise a civil rights claim based on the factual allegations in the complaint, such claim would have accrued at the latest by April 6, 2010, when Plaintiff was first deported to Mexico. *See Spotts*, 613 F.3d at 574 (*Bivens* claim accrues when the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured). As of that time, Plaintiff should have known that Defendant Calvert had breached the promise allegedly made in conjunction with the 2005 plea agreement to prevent Plaintiff's deportation. Thus, the deadline for filing suit was two years later, on April 6, 2012. As explained previously, March 30, 2017, is the earliest possible date on which Plaintiff's complaint can be deemed filed. Consequently, any civil rights claims Plaintiff might have alleged would be untimely and, thus, subject to dismissal with prejudice as frivolous. *See* 28 U.S.C. § 1915(e)(2)(B) (permitting *sua sponte* dismissal of a complaint as frivolous or for failure to state a claim).

### III. LEAVE TO AMEND

Ordinarily, a *pro se p*laintiff should be granted leave to amend his complaint prior to dismissal, however, leave to amend is not required where plaintiff "has already pleaded his 'best case." *Brewster v. Dretke,* 587 F.3d 764, 767-768 (5th Cir. 2009). For the reasons discussed herein, Plaintiff's claim is fatally infirm – that is, it cannot be cured by amendment. Thus, the Court concludes that granting leave to amend would be futile and cause needless delay.

9

That notwithstanding, Petitioner is provided adequate notice of the deficiencies of his complaint by this recommendation, and an opportunity to take any desired further action during the 14-day objection period. *See Brown v. Taylor*, 829 F.3d 365, 370 (5th Cir. 2016) (*sua sponte* dismissal with prejudice "is cabined by the requirements of basic fairness," and thus, unless dismissal is without prejudice or the plaintiff has alleged his best case, the district court must give "the plaintiff notice of the perceived inadequacy of the complaint and an opportunity for the plaintiff to respond"); *cf. Magouirk v. Phillips,* 144 F.3d 348, 359 (5th Cir. 1998) (magistrate judge's recommendation provided adequate notice and reasonable opportunity to oppose *sua sponte* dismissal).

## IV. RECOMMENDATION

For the foregoing reasons, it is recommended that Plaintiff's breach of promise claims be summarily **DISMISSED WITHOUT PREJUDICE** for want of jurisdiction, *see* FED. R. CIV. P. 12(h)(3), and the Clerk of the Court be directed to close this case.

**SIGNED** August 7, 2017.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute,* 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE